UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT D. SANGO #252200,

        Plaintiff,

v.

UNKNOWN FLEURY, et al.,

        Defendants.
_____/

Case No. 2:20-cv-00186

Hon. Robert J. Jonker
Chief U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This is a civil rights action brought by state prisoner Robert D. Sango pursuant to 42 U.S.C. § 1983. Sango alleges in his verified complaint that Corrections Officers Fleury and Eubanks, employees at Alger Correctional Facility (LMF), retaliated against him for filing a lawsuit by attempting to incite other prisoners to harm Sango. In Sango words, Eubanks and Fleury "stopped prisoners from drinking and gambling and told them if they wanted to 'jail' (i.e. prison speak for: be able to do what they want) they would get me off the yard (i.e. prison speak for: hurt or kill me so I'm no longer here)." (ECF No. 1, PageID.2.)

Corrections Officers Fleury and Eubanks filed a motion for summary judgment. (ECF No. 13.) The documents they present to the Court confirm that Sango did not exhaust any grievance through Step III of the Michigan Department of Corrections (MDOC) grievance process. (*See* ECF No. 14-3 (MDOC Prisoner Step III

Grievance Report for Sango); ECF No. 17-2 (Prisoner Grievance Summary Report).) Sango filed a response and declaration. (ECF Nos. 15 and 16.) He argues that Defendants' intimidating conduct excuses his from complying with the exhaustion process. In reply, Defendants argue that Sango's statements are conclusory and fail to create a genuine issue of material fact. (ECF No. 17.)

Accepting Sango's allegations as true, the undersigned concludes that Sango has failed to establish a genuine issue of material fact regarding the availability of the grievance system due to intimidation prior to the time that he filed his complaint. The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court grant Defendants' motion for summary judgment and dismiss the complaint.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[1]   Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A

prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that

4

clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after

5

the response was due. MDOC Policy Directive 03.02.130 at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies

regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

### IV. Analysis

As mentioned in the introduction, the documents before the Court show that Sango did not exhaust any grievance through Step III of the Michigan Department of Corrections (MDOC) grievance process during the relevant time period. (*See* ECF No. 14-3 (MDOC Prisoner Step III Grievance Report for Sango); ECF No. 17-2 (Prisoner Grievance Summary Report).) Sango does not argue that he exhausted his administrative remedies. Instead, he argues that once Defendants intimidated him, he no longer had to exhaust his administrative remedies prior to filing this lawsuit. (ECF No. 15.) In essence, Sango argues that any act of intimidation by Defendants sets aside the requirement that he exhaust his administrative remedies before filing a federal civil rights action.

Sango's argument is based upon the 2016 Supreme Court decision in *Ross v. Blake*. Sango argues that under *Ross*, Defendants' conduct intimidated him and relieved him of his obligation to exhaust his administrative remedies prior to filing this federal lawsuit. As noted above, in *Ross*, the Supreme Court held that the grievance process is not available "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S.Ct. at 1859-60. A threat made against a prisoner because

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

8

of his litigation activities may thwart a prisoner's use of the grievance system. *Does 8-10 v. Snyder*, 945 F.3d 951, 967 (6th Cir. 2019) (retaliatory harassment and threats of harm, if true "render the grievance process functionally unavailable for a person of ordinary firmness.")

The undersigned recognizes that Sango has successfully asserted this argument in at least one prior case. Sango made a similar argument in *Sango v. Brandt*, 1:19-cv-58, 2019 WL 8399788 (Dec. 6, 2019), opinion adopting report and recommendation, 2020 WL 181411 (W.D. Mich. April 9, 2020). In *Brandt*, Sango asserted that he had exposed illegal drugs sales by COs and, as a result, was threatened with physical violence. Sango said that he feared harm if he reported the Officers' wrongdoing by filing a grievance. Sango argued that the grievance process was not available to him due to intimidation. This Court concluded that the grievance process was unavailable because intimidation through threats of physical violence could prevent a prisoner from reporting wrongdoing through the grievance process. *Id.*

The record in this case, however, indicates that the grievance system was available to Sango. Sango's complaint is dated September 24, 2020. (ECF No. 1, PageID.2.) Sango does not indicate when Defendants made the alleged statement or statements. The record in this case indicates that Sango filed numerous grievances before, during and after September 2020. His grievance summary report, shown below, demonstrates that he filed seven grievances in August 2020, one grievance in September 2020, and another seven grievances during the remaining months of 2020.

9

> Case 2:20-cv-00186-RJJ-MV   ECF No. 17-2, PageID.101   Filed 03/04/21   Page 13 of 73
>
> ## Prisoner Grievance Summary Report
>
> | Grievance | Number | Name | Facility | Issue | I Recd | I Dec | II Recd | II Dec | III Recd | III Dec |
> |---|---|---|---|---|---|---|---|---|---|---|
> | 20200968 | 252200 | SANGO | LMF | 17A | 8/3/2020 | d | | N | | |
> | 20200969 | 252200 | SANGO | LMF | 17A | 8/3/2020 | d | | N | | |
> | 20200976 | 252200 | SANGO | LMF | 17I | 8/4/2020 | p | | N | | |
> | 20201009 | 252200 | SANGO | LMF | 17I | 8/10/2020 | d | 8/31/2020 | d | | |
> | 20201035 | 252200 | SANGO | LMF | 28C | 8/14/2020 | x | | N | | |
> | 20201038 | 252200 | SANGO | LMF | 28J | 8/14/2020 | x | | N | | |
> | 20201039 | 252200 | SANGO | LMF | 27Z | 8/14/2020 | x | | N | | |
> | 20201239 | 252200 | SANGO | LMF | 17I | 9/25/2020 | d | | N | | |
> | 20201390 | 252200 | SANGO | LMF | 27B | 10/21/2020 | x | 11/2/2020 | d | | |
> | 20201394 | 252200 | SANGO | LMF | 28A | 10/21/2020 | x | 11/2/2020 | d | | |
> | 20201580 | 252200 | SANGO | LMF | 28E | 11/19/2020 | x | | N | | |
> | 20201628 | 252200 | SANGO | LMF | 28B | 12/4/2020 | x | | N | | |
> | 20201664 | 252200 | SANGO | LMF | 28J | 12/14/2020 | x | | N | | |
> | 20201697 | 252200 | SANGO | LMF | 26Z | 12/17/2020 | d | 1/4/2021 | d | | |
> | 20201698 | 252200 | SANGO | LMF | 17A | 12/17/2020 | d | | N | | |

(ECF No. 17-2, PageID.101.) In short, this report confirms that Sango filed grievances both before and after he filed the complaint in this case.

Some of those grievances stated complaints against the Defendants in this case. (*See* ECF No. 17-2, PageID.140 (Step I grievance dated Oct. 18, 2020, and naming Eubanks), PageID.143 (Step I grievance dated Dec. 2, 2020, and naming "Flurey").) In fact, Sango's October 18, 2020 grievance against Eubanks repeated essentially the same claim that he makes in this case. His Step I grievance is shown below.

> **MICHIGAN DEPARTMENT OF CORRECTIONS**
> **PRISONER/PAROLEE GRIEVANCE FORM**
>
> 4835-4247 10/94
> CSJ-247A
>
> Date Received at Step I  11/19/2020   Grievance Identifier: LMF 201111 1/1581 1248E
>
> Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.
>
> Name (print first, last): Robert Sango   Number: 252200   Institution: LMF   Lock Number: S-1287   Date of Incident: 10/18/20   Today's Date: 10/18/20
>
> What attempt did you make to resolve this issue prior to writing this grievance? On what date? 10/18/20
> If none, explain why.
> I did speak to Rum Hobble without resolution.
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.
>
> C/O Eubanks was provided service on civil action 2:20-cv-181 and is actively recruiting other staff to target me (eg. 10/18/20 I asked Rum Hobble about the weight pit being closed, then [illegible] the Block Rep; Eubank goes into a rant about I'm trying to insight other prisoners — the block Rep. was established for prisoners to speak to about Issues) C/O Eubanks is off balance and must be reigned in. Prisoners must be protected from abuse by staff.
>
> Grievant's Signature: Rot Sango
>
> RESPONSE (Grievant Interviewed?  ☐ Yes  ☒ No   If No, give explanation. If resolved, explain resolution.)

(*Id.*, PageID.140.)

Clearly, the grievance system was available to Sango during the relevant period and he was willing to use it. Indeed, Sango filed grievances against the named Defendants in this case *after* the alleged incidents in this case took place.

Sango makes no attempt to explain how he was intimidated out of filing a grievance that would have been relevant to the claims in this case, but still managed to continue filing other grievances. If Sango actually had been intimidated out of filing grievances, his grievance report would have been empty after he filed his complaint.

11

Furthermore, Sango does not actually say that intimidation by the COs caused him to forgo filing grievances. In other words, Sango does not say that the grievance system was unavailable to him. His affidavit is shown below.



(ECF No. 16.)

This affidavit does not state that Sango stopped filing grievances due to threats. The affidavit also does not say that the grievance system was not available to him. In fact, the records in this case show that the grievance system was available but Sango failed to pursue any grievance through Step III.

12

## V. Recommendation

The undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment (ECF No. 13) and dismiss Sango's complaint without prejudice due to Sango's failure to exhaust his administrative remedies.

Dated:  May 6, 2021                               /s/ *Maarten Vermaat*
                                                  MAARTEN VERMAAT
                                                  U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).